Plaintiff has filed this suit in which he alleges that the defendant is indebted to him in the full sum of $644.71 as a result of an automobile collision in which the defendant ran into the rear end of plaintiff's *Page 407 
jeep. The defendant admits his liability but denies that the damage amounted to $644.71.
The case was tried and the Judge of the District Court, without written reasons, awarded the plaintiff judgment in the sum of $256.39, together with 5% interest from the date of judicial demand until paid and for all costs of suit.
The plaintiff has appealed from this judgment.
The record in this case reveals that on the afternoon of December 13, 1947, at about 3:30 p.m. the defendant, George Jones, was traveling south on Scenic Highway in his automobile, and plaintiff McCarroll's jeep was also being driven south on this highway. The McCarroll jeep was stopped and when the defendant Jones applied his brakes they were ineffective and this was the cause of the collision.
Counsel for plaintiff, on the date of trial, stated that although the plaintiff sued for $644.71 as damages, that actually after the suit was filed the repairs to plaintiff's automobile were completed and the total amount of damages amounted to $553.85.
On December 15, 1947, the defendant, George Jones, who is a colored man, went to see Sam McCarroll, the plaintiff, with regard to the damages and stated that he wanted to pay and was handed a bill for $379.44, signed on the typewriter "Watts 
Behrnes" by Sam McCarroll. This is the amount of damages which McCarroll claimed on that date. Defendant thought that this estimate of damages was high and refused to pay it. Thereupon, on December 18, 1947, Mr. Major, Attorney for defendant, received an estimate of damages, which has been introduced as defendant's Exhibit 2, amounting to $644.71.
It will be noted from the estimate marked defendant Exhibit No. 1 that there is one Karriall trailer, $182.86, which was the price of a new trailer. McCarroll testified that the trailer was repaired at a cost of $92. The plaintiff admitted that the jeep top had depreciated one-third and, the price of a new top being $96.85, therefore, defendant would be entitled to a deduction of one-third of this price, or $32.29. Therefore, the District Judge evidently took as a basis of the damages the first bill presented of $379.44, and deducted therefrom $90.86, which represented the difference between the price of a new trailer and the repairs actually made to the old trailer, and also deducted $32.29, representing the one-third depreciation on the top, leaving a total of $256.29, which is the amount for which the Lower Court rendered judgment.
The plaintiff contends that the Court erred in its judgment in that the estimate of $379.44 was in the nature of a compromise offer and was also in error and made too hastily as it was impossible until the damaged parts of the jeep were taken apart to accurately estimate the actual damage. The offering defendant No. 1, in our opinion, is an estimate of damages and not an offer of compromise. There is no compromise involved where the estimate calls for a new trailer at $182.86 and the testimony shows that the trailer could and was repaired for $92. Furthermore, there is no compromise offer in charging $96.58 where the plaintiff later, on the trial of the case, admits and remits one-third of this amount due to previous depreciation of the top; further, the testimony is conflicting as to whether this jeep needed an entirely new top. The testimony is very strongly to the effect that nothing was damaged except the back curtain of the jeep top had a hole in it which could have been repaired or, at most, a new back curtain installed.
The record reveals that Watts Behrnes, Willys Dealers, handled jeeps, station wagons, trucks and passenger cars in the city of Baton Rouge, and that Sam McCarroll, plaintiff herein, had been working for them on and off since 1940, and, prior to that time, was in the automobile business "since Model T Days." He certainly had ample experience and was capable of making an estimate without having to change it two or three times. In one part of McCarroll's testimony, he testified that he made the first estimate and, in another place, that Mr. Rex Bell made this estimate. Rex Bell is an employee of Watts and Behrnes. *Page 408 
On the final bill of $553.85 there is a charge of $96.85 for a jeep top. As above stated, plaintiff admits that one-third of this amount should be deducted, or $32.29. While McCarroll and Rex Bell, mechanic, testified that the top could not be repaired and had to be replaced, we have the testimony of James Major, attorney for the defendant, and of Walter F. McKenzie, who was in the automobile fender and body repair business and who intended to make an estimate of the damages to the jeep for defendant and who looked at the top, to the effect that they noticed only one hole in the back curtain of the top and that this could have been repaired but, at most, all the top needed was a back curtain. Both testified that the iron or metal bowes of the top were not damaged or bent.
On this same bill is "Left rear spring, $8.50" and "removing and replacing left rear spring, $3.50" McCarroll testified that all of the leaves of the left rear spring were not broken, however, in one place he stated that they were bent beyond repair and, further on in his testimony he said: "Some of them were broken; I am not going to tell you they were all broke."
Rex Bell, witness for the plaintiff, testified that it was not possible to repair the rear spring. It would seem that the leaves which were not broken could have been used.
Also, on this final estimate and bill there is a charge for "new rear housing, $58.00" and "labor to remove and reinstall new housing, $30.00." Witness Bell testified that this rear axle housing had to be replaced "because you cannot straighten an axle housing." This is in direct conflict with the testimony of Walter F. McKenzie, witness for defendant. He testified: "We straighten rear axle housings quite often, and you can straighten a housing, and if you have the equipment, you can put it back in as good condition as it ever was, unless it is an exceptionally bad job. From what I could see, this housing could have been repaired and would have been satisfactory. * * *"
On this bill is listed a new hydraulic lift, $225, and labor to remove and replace hydraulic lift, $40. The first estimate had a charge of $100 for "metal work and repairs hydraulic lift jeep." There is no positive testimony by any witness for defendant that this item could be repaired or could not. Bell, a witness for plaintiff, testified that it had to be replaced new.
McKenzie, whom we consider as a disinterested witness, testified that when he was requested by the defendant to make an estimate of the damages to the jeep and trailer with a view of repairing same, that he went to the garage of Watts and Behrnes and talked to Joe Behrnes and stated his business, and that Joe Behrnes then showed him the jeep and at that time told him: "I want to tell you before you do anything that I am not going to accept any repaired parts on this car. Everything that has been damaged has got to be replaced new."
Behrnes also told McKenzie at that time that the power take-off and the power lift on the jeep was damaged in the wreck and that the rear axle housing was also damaged and he wanted that replaced new as well as a new top, trailer hitch and a new trailer; that he would not accept repairs. McKenzie then stated that after being told that no repairs would be acceptable, he did not even make an estimate.
McKenzie also testified that he did not see any great amount of damage to the jeep from his examination.
In view of the conflicting testimony as to the necessity for the new parts rather than the repair of the old, we feel that it is doubtful that plaintiff has borne the burden of proof sufficiently to fix a definite amount for the damages, however, defendant does not complain of the judgment of the District Court.
The Judge of the District Court was evidently not impressed with the plaintiff's evidence and accepted the first and lowest estimate of damages as a basis for his judgment, which is not unreasonable in view of the fact that plaintiff did not offer satisfactory proof to show an error in this estimate.
For the reasons herein stated, it is therefore, ordered that the judgment of the District Court be affirmed and plaintiff to pay the cost of appeal. *Page 409